IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01771-LTB-CBS

ERNIE CALBART SR.,
    Plaintiff,
v.

MEDICAL DIRECTOR DR. CRUM,
    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendant Dr. Crum's Motion for Summary Judgment (doc. #38), filed on March 19, 2012. Plaintiff Ernie Calbart filed his response (doc. #46) along with a second Motion to Amend Complaint (doc. #44) and his own affidavit (doc. #45) on April 13, 2012. Dr. Crum replied in support of summary judgment (doc. #48) and responded to the motion to amend (doc. #49) on April 25, 2012. Mr. Calbart sur-replied regarding summary judgment (doc. #50) on May 9, 2012.

    In an Order of Reference (doc. # 17) dated September 27, 2011, this matter was referred to the Magistrate Judge to schedule, hear, and determine all non-dispositive pretrial matters, and to conduct hearings and submit proposed findings of fact and recommendations for rulings on dispositive motions. Having carefully reviewed the pending motions, the related briefs, and the applicable law, the court recommends that Defendant's Motion for Summary Judgment be granted and that Plaintiff's Motion to Amend be denied.

## BACKGROUND

    Ernie Calbart, the *pro se* plaintiff, brings this case against Defendant Dr. Crum, the Denver County Jail Medical Director, regarding events that transpired while Mr. Calbart was a prisoner in the

jail. Mr. Calbart alleges that Dr. Crum acted with deliberate indifference towards Mr. Calbart's serious medical needs in violation of the Eighth Amendment by cancelling an order for crutches on December 23, 2010 and by denying approval of knee replacement surgery in the spring of 2011. Additionally, Mr. Calbart seeks to add as new defendants the rest of the multi-disciplinary team that reviewed his need for surgery, as well as a new claim of conspiracy.[1]

The following facts describe the relevant events and are undisputed except where noted. Prior to his incarceration, Mr. Calbart was scheduled for elective knee surgery through the Department of Veterans Affairs. Am. Compl. Attach. (doc. #8, page 33 of 63); *Id.* (page 54 of 63) ("Pt was a no show for pre-op apt today for elective knee surgery . . . ."). This surgery was cancelled as a result of Mr. Calbart's incarceration. *See id.* (page 33 of 63).

Between his September 2009 incarceration and May of 2010, Mr. Calbart was moved on at least eight occasions, at his own request, back and forth[2] between the medical ward and the general population. *Calbart v. Denver Sheriff Dept.*, 2012 WL 1229923 at *3–*7. Each time Mr. Calbart was moved to the medical ward he was given a walking aid—a cane, crutches, or a walker—but he was not allowed to have one in the general population due to risk of its improper use. *See id.* at *3. During this time his chart was reviewed twice by Dr. Crum, and he was seen on three occasions by Dr. Kelly O'Brien, who evaluated his knees and "noted that Mr. Calbart's MRI showed bilateral arthritic knees." *Id.* at *3–*7. Reports from that period indicate that Mr. Calbart was able to function without assistance:

---

[1] Mr. Calbart filed a prior claim against the Denver Sheriff Department ("DSD") seeking damages for, inter alia, failure to provide crutches and to treat his knee injury appropriately. *Calbart v. Denver Sheriff Dept.*, 2012 WL 1229923 (D. Colo. Feb. 23, 2012). In my recommendation regarding summary judgment in that case, I described in detail Mr. Calbart's history of treatment for his knees at the Denver County Jail from his transfer into the jail on September 8, 2009, through his transfer to the Denver Justice Center on May 2, 2010. Id. at *3-*7. Mr. Calbart's claim against the DSD was summarily dismissed on April 12, 2012. *Calbart v. Denver Sheriff Dept.*, 2012 WL 1229931 (D. Colo. Apr. 12, 2012).

[2] There were at least eight moves in total, four in each direction. *Calbart v. Denver Sheriff Dept.*, 2012 WL 1229923 at *3 –*7.

>   Medical records dated January 23, 2010 report that Mr. Calbart was observed standing on one leg and kicking his cell door with the other leg. The same records indicate that Plaintiff was able to walk around his cell without crutches. The latter behavior apparently had been observed on three different occasions. On January 24, 2010, Mr. Calbart reportedly was kicking the door of his cell with both feet and urinating on the floor and under the door. Plaintiff's crutches were removed by a deputy sheriff.[3]

On June 26, 2010, Mr. Calbart filed an Inmate Request for Medical Assistance reporting that he had fallen coming out of the shower and requesting a walker. Def.'s Mot. for Summ. J. Attach. (doc. #38-4, page 12 of 15). Dr. O'Brien approved the walker on June 28, 2010, Am. Compl. Attach. (doc. #8, page 56 of 63), and Mr. Calbart was moved back to the medical ward in early July. Def.'s Aff. (doc. #8, page 7 of 63).

On July 13, 2010, Mr. Calbart filed an Inmate Request for Medical Assistance complaining of inability to walk and requesting a wheel chair. Def.'s Mot. for Summ. J. Attach. (doc. #38-4, page 13 of 15). Nurse Farmer declined the wheel chair request, noting that "[Mr. Calbart] has ability to walk [with] assistance device." *Id.*

On July 23, 2010, Dr. O'Brien requested that the orthopedist evaluate Mr. Calbart's knees and "recommend non-surgical treatment options." *See* Am. Compl. Attach. (doc. #8, page 60 of 63). Ms. Youngs, a physician's assistant at Denver Health Center ("DHC"), noted that "[Mr. Calbart] is aware that this is an elective case which requires significant rehabilitation and recuperative," and that "in the meantime, he will continue his current medications per his facility, ambulating and weight bearing as tolerated." *Id.* (page 33 of 63). Ms. Youngs remarked that Mr. Calbart would return "for preop . . . if and when approved for surgery." *Id.*

On August 3, 2010, Mr. Calbart was approved for a wheel chair, *see id.* (page 40 of 63), but on August 13, 2010, Dr. O'Brien recommended that he not use the wheel chair so that he could strengthen his muscles for eventual surgery. *Id.* (page 59 of 63). He was given exercises to do by Dr. Brigit Mueller on August 26, 2010. *Id.* (page 34 of 63).

---

[3] *Id.* at *6 (citations omitted).

On October 1, 2010, Ms. Youngs made a note that DHC had requested approval for Mr. Calbart to have knee replacement surgery, and that she received an email "from his facility" that the procedure was not approved. *Id.* (page 31 of 63). In a follow-up at the DHC on October 11, 2010, Dr. Berroa recommended knee replacement surgery and provided crutches. *Id.* (page 30 of 63).

On October 21, 2010, Mr. Calbart filed an Inmate Request for Medical Assistance complaining of inability to walk and sores on his back, requesting an increase in his medication. Def.'s Mot. for Summ. J. Attach. (doc. #38-4, page 14 of 15). Nurse Walden, who found no sores and noted that Mr. Calbart was ambulating on crutches to the office and back, recommended more ambulation. *Id.*

On November 19 and 22, 2010, Mr. Calbart filed Inmate Grievance Forms complaining of inability to walk and requesting a walking aid and a transfer back to the medical ward. Am. Compl. Attach. (doc. #8, page 14–15 of 63). Dr. O'Brien commented that the "knee does need knee replacement" and that she would "[discuss with] DSD schedule for knee surgery." *Id.* (page 62 of 63). She also mentioned that DSD had removed Mr. Calbart's crutches because he had used them as a weapon. *Id.* Mr. Calbart denies having used his walking aids as weapons and claims that he has not been written up for such an act. Pl.'s Aff. (doc. #45) ¶ 8.

On December 1, 2010, Dr. Crum reviewed Mr. Calbart's chart and made a progress note in which he ordered that "[Mr. Calbart] is to have [no] crutches, cane or walker." Def.'s Mot. for Summ. J. Attach. (doc. #38-4, page 15 of 15). Dr. Crum reported observations by himself, DSD, and nurses that Mr. Calbart was ambulatory without assistance and used walking aids as weapons. *Id.*

On December 12, 2010, Mr. Calbart filed an Inmate Grievance Form requesting his crutches back for good behavior. Am. Compl. Attach. (doc. #8, page 17 of 63). On December 21, 2010, Dr. Stob allowed the crutches, but two days later Dr. Crum cancelled the crutch request, referencing his December 1 note. *Id.* (page 12 of 63).

4

On December 29, 2010, Dr. O'Brien sent an email to a group of orthopedic doctors and DSD officials, including Dr. Crum, regarding Mr. Calbart's status. Def.'s Mot. for Summ. J. Attach. (doc. #38-3, page 3 of 3). She described Mr. Calbart's need for elective knee surgery and the problems associated with his use of walking aids as weapons, and she requested advice from both the doctors and officials on how to deal with him. *Id.* On January 6, 2011, Dr. Mark Hammerberg, an orthopedist, replied, explaining that he had looked at Mr. Calbart's x-rays and that knee surgery for Mr. Calbart "is an elective procedure, and there is no urgency from a surgical standpoint." *Id.* (doc. #38-3, page 2 of 3).

On March 25, 2011, Mr. Calbart filed an Inmate Grievance Form requesting an update on the status of his knee surgery, citing Dr. O'Brien's November 22, 2010 progress report indicating that she would discuss scheduling surgery with DSD. Am. Compl. Attach. (doc. #8, page 21 of 63). Dr. Crum responded that the surgery was not scheduled, describing the surgery as "elective" and "non-urgent/non-emergency," and indicating that Mr. Calbart could pursue the procedure on his release. *Id.*

Mr. Calbart alleges that he has been scheduled for knee surgery since being transferred to a Department of Corrections facility, though the record does not indicate when this transfer occurred. Pl.'s Aff. (doc. #45) ¶ 11. He also claims that he is confined to a wheel chair at the Department of Corrections facility. *Id.* ¶ 13.[4]

## ANALYSIS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c)(2). Additionally,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

---

[4] Mr. Calbart was recently moved to Denver for "surgery for my knees total knee replacement [sic]." (*See* Doc. # 62).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, "a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), but "the courts do not serve as the *pro se* litigant's advocate, and *pro se* litigants are expected to follow the Federal Rules of Civil Procedure." *McDaniels v. McKinna*, 96 F. App'x 575, 578 (10th Cir. 2004).[5]

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillan*, 503 U.S. 1, 5 (1992) (internal quotation marks and citations omitted).

An Eighth Amendment claim for inadequate medical care has two components: (1) objectively, the plaintiff has "'serious' medical needs"; and (2) subjectively, prison officials acted with "deliberate indifference" towards those medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 497 U.S. 97, 106 (1976)). The objective component is only met by "those deprivations denying the minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298 (internal question marks and citations omitted). "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209

---

[5] Copies of unpublished cases cited are attached to this Recommendation.

(10th Cir. 2000) (quoting *Farmer*, 511 U.S. at 837), *overruled on other grounds*, *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir.2008).

Neither negligent medical treatment nor a disagreement in medical judgment states a valid medical mistreatment claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107. "A prison doctor does not violate the Eighth Amendment's prohibition on cruel and unusual punishment when he 'simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated.'" *Heidtke v. Corr. Corp. of Am.*, 469 F. App'x. 689, 693 (10th Cir. 2012) (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks and citations omitted)). "Indeed, our subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary." *Self*, 439 F.3d at 1233 (10th Cir. 2006).

**A. Denial of Crutches**

Mr. Calbart alleges that he had a serious medical need for crutches, and that Dr. Crum was deliberately indifferent to that need when he cancelled Dr. Stob's order for crutches on December 23, 2010. Because Mr. Calbart disputes the medical staff's multiple notes that he has used his walking aids as weapons, the court will assume for purposes of this motion that he has not. The court will also assume that Mr. Calbart's condition constitutes a serious medical need under the objective component of the Eighth Amendment.

Mr. Calbart has not put forth sufficient facts to establish a triable issue with respect to Dr. Crum's subjective intent. During Mr. Calbart's incarceration at Denver County Jail, staff doctors saw him at least seven times for problems with his knees, allowed him to visit an orthopedist at least three times, and gave him walking aids at least six times. Mr. Calbart frequently gave up his walking aids at his own request in order to return to general population. Dr. Crum allowed Mr. Calbart to have crutches as recently as October 10, 2010. Dr. Crum's December 23, 2010, denial of the crutches specifically

noted his medical diagnosis that Mr. Calbart was not in need of crutches. Am. Compl. Attach. (doc. #8, page 17 of 63) (referencing his December 1, 2010 note, Def.'s Mot. for Summ. J. Attach. (doc. #38-4, page 15 of 15), that Mr. Calbart was "ambulatory [without] assistance").

The Tenth Circuit, in *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006), held that, under the Eighth Amendment, prisoners have no "right to a particular course of treatment," and so doctors were not deliberately indifferent in denying a wheelchair after medical diagnosis. Other circuits similarly have found no deliberate indifference when doctors evaluated prisoners' conditions and denied walking aids. S*ee Young v. Nichols*, 398 F. App'x 511, 517 (11th Cir. 2010) ("Young did not establish that appellees acted with deliberate indifference by denying him access to crutches."); *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (finding no deliberate indifference where plaintiff "was reasonably diagnosed as not needing a crutch, and was given the option of residing in segregation to have access to a crutch").

After drawing all inferences in favor of Mr. Calbart, the court cannot conclude that a sufficient showing has been made to establish that Dr. Crum was deliberately indifferent to Mr. Calbart's medical condition when he cancelled the order for crutches. The numerous examinations by staff doctors and the multiple allowances of walking aids show attention rather than indifference; Mr. Calbart's disagreement with Dr. Crum's medical diagnosis that crutches were not medically necessary does not constitute an Eighth Amendment violation.

**B. Denial of Knee Surgery**

Mr. Calbart also alleges that Dr. Crum's denial of knee surgery constitutes deliberate indifference to a serious medical need. Again, Mr. Calbart has again failed to establish a triable issue on the subjective component. As noted above, during his incarceration, Mr. Calbart was seen at least seven times regarding his knees by staff doctors and was allowed to visit an orthopedist at least three times. Upon receiving an October, 2010, recommendation for knee surgery from an orthopedist, Dr. Crum's

staff noted the need for approval of surgery. In December of 2010 Dr. Crum and his staff discussed Mr. Calbart's potential surgery with orthopedic surgeon Dr. Mark Hammerberg. Only after Dr. Hammerberg told Dr. Crum that the surgery was elective and "non-urgent from a surgical point of view" did Dr. Crum deny the surgery.

As evidence that his surgery was necessary, Mr. Calbart points out that he was scheduled for elective knee surgery through the Department of Veterans Affairs prior to his incarceration, and that he has been scheduled again for surgery since being transferred to a long-term Department of Corrections facility. However, as Dr. Crum notes, his medical diagnosis of Mr. Calbart's need for surgery was made in a different context than Mr. Calbart's situation prior to or subsequent to incarceration in the Denver County Jail.

Generally, a "'delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.'" *Tyler v. Sullivan*, 1996 WL 195295 at *2 (10th Cir. 1996) (quoting *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)). A claim of cruel and unusual punishment is not established when the "plaintiff differs with the medical judgment of the prison doctor, believing that he should have received his elective surgery sooner than he did." *Olson*, 9 F.3d at 1477. The Tenth Circuit has found no deliberate indifference in delaying a prisoner's elective cyst surgery where the prisoner had numerous and frequent contacts with the doctor and showed no substantial harm resulting from the delay. *Tyler*, 1996 WL 195295 at *2. More on point, denial of elective knee surgery to a prisoner who was mobile with pain was not deliberate indifference. *Green v. Manning*, 692 F.Supp. 1283 (S.D. Ala. 1987). *See also Walnorch v. McMonagale*, 412 F.Supp. 270, 275 (E.D. Pa. 1976) ("Stripped to essentials, plaintiff states nothing more than his dissatisfaction with the speed with which his non-critical knee condition is being corrected."); *Cook v. Hayden*, 1991 WL 75648 at *3 (D. Kan. Apr. 26, 1991) ("the delay of elective surgery for a reasonable period of time does not state a claim of deliberate indifference").

The record of Mr. Calbart's knee treatment under Dr. Crum, of Mr. Calbart's other surgery schedules, and Dr. Crum's denial of elective knee surgery after a timely consultation with an orthopedic surgeon are not sufficient to establish that Dr. Crum was deliberately indifferent to Mr. Calbart's medical condition.

**C. Plaintiff's Motion to Amend**

In his Motion to Amend, Mr. Calbart seeks to add as additional defendants the other members of the multi-disciplinary panel that evaluated and denied his request for surgery at Denver County Jail, and to add conspiracy claims. The alleged conspiracy is based upon the same alleged deliberate indifference in denying surgery and walking aids.

Motions to amend are committed to the trial court's discretion. *Woolsey v. Marion Laboratories*, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991). While Fed. R. Civ. P. 15 requires leave to amend be given freely, "[t]he broad permissive language appearing in both the rule and the cases does not mean that there are no standards by which the trial court is to be guided." *Moore v. U.S./U.S. Dept. of Agric. Forest Serv.*, 864 F. Supp. 163, 164 (D. Colo. 1994) (internal quotation marks and citation omitted). Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted. *T.V. Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citations omitted). *See also Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (internal quotation marks and citation omitted); *Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir. 1997) (affirming district court's denial of motion to amend based on futility); *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992) (a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted); *Schepp v. Fremont County*, 900 F.2d 1448, 1451 (10th Cir. 1990) (A motion to

amend may be denied as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim."); *Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001) (In order to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)).

Because the record is not sufficient to establish a triable issue regarding Dr. Crum's deliberate indifference, Mr. Calbart's proposed amendment to add alleged co-conspirators for the same claims is futile. Therefore, his Motion to Amend is properly denied.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that Defendant's Motion for Summary Judgment (doc. #38) be GRANTED, that Plaintiff's Motion to Amend Complaint (doc. #44) be DENIED, and that Judgment on the Amended Complaint (doc. #8) be granted in favor of Defendant Dr. Crum and against Plaintiff Mr. Calbart.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to

appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999). (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 21st day of August, 2012.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge